**BERMAN, SAUTER, RECORD & JARDIM, PC**
Attorneys At Law
222 Ridgedale Avenue
Morristown, New Jersey 07962
973.267.9600
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| USHA JAIN,<br><br>        Plaintiff,<br><br>vs.<br><br>SEALED AIR CORPORATION; THE RETIREMENT COMMITTEE OF SEALED AIR CORPORATION; FIDELITY MANAGEMENT TRUST COMPANY; and FIDELITY ABC COMPANIES 1-5 (fictitious entities),<br><br>        Defendants. | Civil Action No: _____<br><br><br>**COMPLAINT** |

Usha Jain ("Plantiff"), the beneficiary of her deceased husband, Sushil Jain, by and through her undersigned counsel, and by way of this Complaint against: Sealed Air Corporation (the "Company"); the Retirement Committee of Sealed Air Corporation (the "Committee" and, collectively with the Company, the "Company Defendants"); Fidelity Management Trust Company ("Fidelity"); and a certain affiliate or subsidiary of Fidelity whose identity is not yet known but which provided "recordkeeping" services to the Company Defendants and/or Fidelity under the trade name "Fidelity Investments" ("Fidelity ABC Companies 1-5" and, collectively with Fidelity, the "Fidelity Defendants" and, collectively with Fidelity and the Company Defendants, the "Defendants"), alleges as follows:

## SUMMARY OF ACTION

1. Plaintiff brings this Complaint for equitable relief seeking among other things an Order compelling Defendant to reinstate amounts that were "forfeited" from her account under the Profit-Sharing Plan of Sealed Air Corporation Profit-Sharing (the "Plan") in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001.

## THE PARTIES

2. Plaintiff is an individual residing in Hillsdale, New Jersey.

3. Plaintiff is the surviving spouse of Sushil Jain.

4. Sushil Jain was an employee of Defendant Company.

5. Sushil Jain was a participant of the Plan.

6. Sushil Jain is now deceased.

7. Plaintiff is the "beneficiary" of Sushil Jain with respect to Sushil Jain's benefits and accounts under the Plan, within the meaning of the Plan and within the meaning of § 3(8) of ERISA, 29 U.S.C. § 1002(8).

8. Defendant Company is a corporation with a place of business at 200 Riverfront Boulevard, Elmwood Park, New Jersey  07407.

9. Defendant Company sponsors and maintains the Plan.

10. Defendant Company is the "plan sponsor" of the Plan within the meaning of § 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B).

11. Defendant Company is a "fiduciary" of the Plan within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

12. Defendant Committee is established pursuant to Section 6.1 of the Plan.

13. Defendant Committee is the "plan administrator" of the Plan within the meaning of § 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

14.   Defendant Committee is a "fiduciary" of the Plan within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

15.   Defendant Fidelity is a business entity with a place of business at 300 Puritan Way, Marlborough, Massachusetts 01752.

16.   Defendant Fidelity conducts business in New Jersey.

17.   Upon information and belief, Defendant Fidelity violated New Jersey law by failing to register its business activities with the Secretary of State of New Jersey and by failing to pay to New Jersey legally required business registration fees and by failing to register an agent for services of process in the State of New Jersey in violation of New Jersey law.

18.   Defendant Fidelity is the "Trustee" of the Plan within the meaning of Section 1.1 of the Plan.

19.   Defendant Fidelity is a "fiduciary" of the Plan within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

20.   Defendant Fidelity is a "party in interest" to the Plan within the meaning of § 3(14) of ERISA, 29 U.S.C. § 1002(14).

21.   Defendant Fidelity also serves as a party in interest to numerous employee benefit plans that are subject to ERISA and that reside in the State of New Jersey.

22.   Upon information and belief, Defendant Fidelity ABC Companies 1-5 provided services to the Company Defendants and/or the Plan, including and in particular services relating to the "recordkeeping" of participant accounts under the Plan ("Recordkeeping"), and such services were provided pursuant to written service contracts.

23.   Upon information and belief, Defendant Fidelity knows the true identity and address of Fidelity ABC Companies 1-5, and Defendant Fidelity has, or should have, information about such written service contracts along with copies thereof.

24.   Upon information and belief, Defendant Fidelity ABC Companies 1-5 conduct business in New Jersey, and act as parties in interest to numerous employee benefit plans that are subject to ERISA and that reside in New Jersey.

3

25.   Upon information and belief, each Defendant Fidelity ABC Companies 1-5 is, a "fiduciary" of the Plan within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21).

26.   Each Defendant Fidelity ABC Companies 1-5 is, upon information and belief, a "party in interest" of the Plan within the meaning of § 3(14) of ERISA, 29 U.S.C. § 1002(14).

## JURISDICTION AND VENUE

27.   Plaintiff asserts concurrent federal jurisdiction pursuant to § 502(e) of ERISA, 29 U.S.C. § 1132(e), and 28 U.S.C. § 1331.

28.   Venue is proper in the District of New Jersey pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and pursuant to 28 U.S.C. § 1391(a), because Company Defendants violated ERISA in this District, reside in this District and are subject to personal jurisdiction in this District; and because Fidelity Defendants conduct business in this District, violated ERISA in this District, and violated the laws of a state in this District by failing to register their business activities with the Secretary of State of New Jersey, and further because a "substantial part" of the events and omissions giving rise to the claims brought herein occurred in this District.

## FACTUAL ALLEGATIONS

### Defendants Promised Vesting; They Actually Delivered on the Promise

29.   Sushil Jain was hired by Defendant Company in February 1990, and was involuntarily terminated in November 1992.

30.   Sushil Jain was terminated by his immediate supervisor, "Ted," in a manner that Sushil Jain believed was in error, and in violation of Defendant Company's policies and state law.  Upon information and belief, "Ted" and his father were principle owners of a business that was purchased by Defendant Company. Sushil Jain had potential legal claims against Defendant Company in connection with his termination.

31.   Sushil Jain appealed his termination directly to the Chief Executive Officer of Defendant Company, T.J. Dermot Dunphy.  They had a face to face meeting to discuss Sushil Jain's termination.

32.   Mr. Dunphy stated to Sushil Jain, in substance, that he could not reverse the termination because of employee "morale" issues but that, if Sushil Jain accepts the termination without challenge, Defendant Company would "vest" Sushil Jain's Plan accounts.

33.   Mr. Dunphy's statement to Sushil Jain promising to "vest" his Plan accounts was a material representation.

34.   Mr. Dunphy followed through on his promise that Defendant Company would vest the Plan accounts.

35.   Defendant Company took certain steps to cause Sushil Jain's Plan accounts to become fully vested.

36.   The accounts did, in fact, become 100% vested.  Even today, Defendant Company is aware of this, and they do not and cannot deny this.

37.   Sushil Jain received written Plan statements confirming the vesting of his Plan accounts and showing his Plan account as "100%" vested.

38.   Sushil Jain relied upon the promises and representations of Mr. Dunphy.

39.   Specifically, in reliance upon such promises and representations, Sushil Jain accepted his termination, did not challenge or appeal it, and did not bring legal action or do anything else, other than look for a new job.

40.   Sushil Jain refrained from exercising his legal rights against the Company, and refrained from exercising his rights as an employee, under applicable Company policies, in challenging his termination.

41.   Sushil Jain's reliance was reasonable because the promises of Mr. Dunphy constituted an oral agreement between Sushil Jain and Defendant Company, and Defendant Company actually acted as it promised.

5

42.   Sushil Jain's reliance was reasonable in that Defendant Company actually caused Sushil Jain's Plan accounts to become vested, and because the written statements confirmed this.

43.   Sushil Jain's reliance was reasonable because Defendants never implemented a forfeiture of his accounts even though the Plan would have otherwise provided for it.

44.   Upon information and belief, Defendant Fidelity ABC Companies 1-5 conducted the Recordkeeping and caused the Recordkeeping to reflect full vesting of Sushil Jain's Plan account.

45.   Upon information and belief, Defendant Fidelity ABC Companies 1-5 used computers, software, algorithms, and employee-participant data feeds from Defendant Company in order to conduct the Recordkeeping (the "Recordkeeping Computer").

46.   Upon information and belief, the Recordkeeping Computer reflected that Sushil Jain's Plan accounts were 100% vested.

47.   Upon information and belief, the Recordkeeping Computer, because of its programming, algorithms and employee-participant data feeds from Defendant Company, could not possibly reflect Sushil Jain's Plan accounts as 100% vested unless it was affirmatively programmed to do so.

48.   Sushil Jain's Plan accounts did not become 100% vested because of an "administrative error," as falsely and illegally claimed by Defendants.

49.   Rather, Sushil Jain's Plan accounts became 100% vested because Company Defendants agreed to provide him with that benefit in exchange for his promises not to challenge his termination.   Company Defendants directed Fidelity ABC Companies 1-5 to reflect this vesting in the Recordkeeping.

50.   Fidelity ABC Companies 1-5 affirmatively programmed the Recordkeeping Computer to reflect Sushil Jain's Plan accounts as 100% vested, and they did because Company Defendants directed them to do so (the "Vesting Direction").

6

51.   Sushil Jain was not a "highly compensated" employee so it was permissible under ERISA for Defendant Company to provide him with vesting of his Plan accounts in a manner more favorable than as provided under the Plan.

52.   Fidelity ABC Companies 1-5 has, or should have in its possession (because they are required under ERISA), written records memorializing the Vesting Direction.

53.   Upon information and belief, the Vesting Direction records may be in the form of database programming, transaction and override records.

54.   Years later, on January 29, 2007, Defendant Company and the Plan ratified that Sushil Jain's Plan accounts were 100% vested in the following manner.

55.   Defendant Company, Defendant Committee, the Plan, Defendant Fidelity and Sushil Jain conducted a transaction involving common stock of Defendant Company held by the Plan and allocated to Sushil Jain's Plan accounts (the "Stock Transaction").

56.   Sushil Jain's Plan accounts participated in the Stock Transaction – and all of his accounts' shares of common stock were sold to the Plan and/or Defendant Company – on the basis that his Plan accounts were 100% vested.

57.   The Stock Transaction was subject to the U.S. Securities Exchange Act of 1934.

58.   The common stock, and the sale thereof, was, or should have been "registered" under U.S. securities laws.

59.   Plaintiff has a right to obtain documents and information from Defendant Company regarding whether the Stock Transaction and the common stock were properly registered and/or complied with the U.S. securities laws.

60.   By entering into the Stock Transaction with Sushil Jain, Defendant Company ratified that Sushil Jain's Plan accounts were properly and accurately 100% vested.

**Vesting Reversed – Account Forfeited – Sushil Jain Dies**

61.   On a certain date, in 2008 or later, which date shall be determined, the Recordkeeping was affirmatively and intentionally altered, and the Plan records were changed by

Defendants, to reverse the Vesting Direction, and to cause the forfeiture of 80% of Sushil Jain's Plan accounts (the "Illegal Forfeiture").

62. By the same action, Defendants reversed or rescinded, the Stock Transaction.

63. To the extent Defendant Company claims "administrative error" as a basis for engaging in the Illegal Forfeiture, it is acting irresponsibly and in blatant violation of ERISA, because the Company knows that it is impossible for the Recordkeeping to reflect full vesting without it being affirmatively programmed.

64. Further, upon information and belief, those agents of Defendant Company who claim "administrative error" did not work for the Company during the relevant time periods, and they or their predecessors lost the Plan's records, and each of them failed to even attempt to contact T.J. Dermot Dunphy to confirm that Sushil Jain's Plan account was properly fully vested.

65. The Illegal Forfeiture was unlawful because it violated numerous provisions of ERISA.

66. The Illegal Forfeiture caused Sushil Jain and his beneficiary, Plaintiff, substantial monetary damages.

67. The individual actors of Defendants who participated in the Illegal Forfeiture acted as fiduciaries of the Plan and violated their fiduciary duties under ERISA.

68. Upon information and belief, each such individual actor is personally liable for Plaintiff's losses in connection with the Illegal Forfeiture.

69. Upon information and belief, Defendants acted to reverse the Vesting Direction eight years after issuing it, and after Sushil Jain had already reasonably relied on statements of Defendant Company that he would receive that vesting, and after Sushil Jain had already refrained from appealing his termination and taking legal action against Defendant Company.

70. After reviewing his Plan statement in or about July of 2010, Sushil Jain noticed that his Plan account lost substantial value.

8

71.    Sushil Jain commenced correspondence and telephone conversations with Defendants during a period of several weeks and explained the circumstances pleaded herein.

72.    Despite the efforts of Sushil Jain, the Defendants refused to reinstate his Plan account, refused to investigate the matter, informed him that he must "prove" his claims by presenting Plan records, and admitted that the Defendants lost Plan records.

73.    For the first time, Sushil Jain realized that Defendants implemented the Illegal Forfeiture.

74.    Sushil Jain died on September 23, 2010.

75.    Sushil Jain's reliance on Mr. Dunphy's statements and his further reliance on Defendant Company's conduct was detrimental.

76.    The circumstances pleaded herein, especially Sushil Jain's sudden loss of significant amounts of his retirement money, caused Sushil Jain extreme distress and anguish, and he developed medical problems associated with stress and anxiety, for which he was treated by a physician.

77.    Upon information and belief, the sudden stress and anxiety contributed to Sushil Jain's death.

78.    Plaintiff is the beneficiary of Sushil Jain with respect to the Plan.

79.    During all relevant periods, including the period of August 10, 2010, through September 23, 2010, Sushil Jain provided Plaintiff with a detailed and specific account of the matters pleaded herein.  As he grew more ill, and as he grew more concerned about the sudden loss of his retirement money, Sushil Jain provided Plaintiff with more and more details regarding the factual matters pleaded herein.

80.    Years after coming to agreement with Mr. Dunphy, and as he approached his retirement, Sushil Jain suffered an enormous and shocking loss of his retirement funds, under extraordinary and almost inconceivable circumstances.

81.    Sushil Jain is the victim of Company Defendants, acting through certain callous and unethical corporate executives of Sealed Air Corporation, who now act solely in their

own interests, without regard to the gentlemanly and ethical business dealings of their corporate predecessors.

82.   Defendants now claim that the Plan "requires" them to implement the Illegal Forfeiture, however, Defendants have provided Plaintiff with no explanation whatsoever as to why they failed to follow the terms of the Plan for over eight years by failing to incorporate the forfeiture upon the actual forfeiture event.

83.   ERISA requires fiduciaries to disregard the terms of a plan as necessary to fulfill their fiduciary duties.

84.   ERISA requires Defendants to retain Plain records and, therefore it is improper for Defendants to require Plaintiff to present them with "records" to validate her claims.

### Defendants Violate ERISA

85.   Defendants lost the Plan's records, including records memorializing the Vesting Direction.

86.   Defendants lost the Plan's records, including records memorializing Defendant Company's agreement to fully vest Sushil Jain's Plan accounts.

87.   Defendant Company violated § 209 of ERISA, 29 U.S.C. § 1059, which provides that "every employer shall…maintain records with respect to each of his employees sufficient to determine the benefits due…".

88.   Defendants breached their fiduciary duty under ERISA by losing the Plan's records.

89.   Defendants caused the Plan to forfeit Sushil Jain's vested Plan accounts.

90.   ERISA strictly prohibits the alienation of vested pension benefits under its "anti-alienation" rules.  The Plan (Section 5.12) also strictly prohibits the alienation of vested pension benefits.

91.   By engaging in the Illegal Forfeiture, Defendants violated § 206(d) of ERISA, 29 U.S.C. § 1056(d).

92.   Defendants violated their fiduciary duty under ERISA by violating the anti-alienation provisions of ERISA, and the anti-alienation provisions of the Plan.

93.   By engaging in the Illegal Forfeiture, Defendants caused the Plan to violate the minimum vesting standards of § 411 of the Internal Revenue Code, 26 U.S.C. § 411.

94.   By engaging in the Illegal Forfeiture, Defendants have caused material risk that the Internal Revenue Service will disqualify the Plan ("Disqualification") from favorable tax treatment under § 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a).

95.   A Disqualification will cause serious financial harm to each participant of the Plan, and Defendants have, through their illegal actions, placed such Plan participants at risk.

96.   In doing so, Defendants have violated their fiduciary duties to the Plan and its participants and beneficiaries, in violation of ERISA.

97.   Defendants violated their fiduciary duty under ERISA by falsely claiming that the Vesting Direction was an "administrative error" without having any basis in fact or law, or any evidence whatsoever, to make this claim.

98.   Defendants violated their fiduciary duty under ERISA by demanding of Plaintiff that she provide written documents in support of claims hereunder, because, under ERISA, Defendant Company, as employer, is responsible for maintaining all Plan records.

99.   Upon information and belief, the funds that Sushil Jain forfeited in connection with the Illegal Forfeiture were used by Company Defendant to directly or indirectly benefit Company Defendant, and in violation of the Plan's governing documents (the "Illegal Prohibited Transaction").

100.  Defendants caused the Illegal Prohibited Transaction in violation of § 406 of ERISA, 29 U.S.C. § 1106.

101.  Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants failed to discharge their duties solely in the interest of the participants of the Plan and their beneficiaries.

102. Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants failed to discharge their duties with care, skill, prudence and diligence.

103. Through their above-pleaded acts and omissions, as fiduciaries of the Plan, Defendants violated their respective fiduciary duties under § 404(a) of ERISA, 29 U.S.C. § 1104(a) to Sushil Jain and Plaintiff and as a direct result caused them substantial harm.

### FIRST COUNT
### ERISA EQUITABLE ESTOPPEL

104. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

105. Defendant Company promised Sushil Jain 100% vesting of his Plan accounts.

106. Sushil Jain relied on that promise.

107. Sushil Jain's reliance was reasonable.

108. Sushil Jain relied on that promise to his detriment by not pursing legal claims against the Defendant Company in connection with his termination.

109. Defendants' acts towards implementing the Illegal Forfeiture is invalid and illegal by virtue of the principles of equitable estoppel under ERISA as recognized under the laws of this District.

110. Plaintiff, as beneficiary, has been harmed as a result of the aforementioned illegal acts of the Defendants.

### SECOND COUNT
### VIOLATION OF ERISA
### PROHIBITED TRANSACTION

111. Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

112. Defendants' acts towards implementing the Illegal Forfeiture and deriving a benefit therefrom constituted a prohibited transaction under § 406 of ERISA, 29 U.S.C. § 1106.

113.  Plaintiff has been harmed as a result of the aforesaid.

### THIRD COUNT
### VIOLATION OF ERISA
### BREACH OF FIDUCIARY DUTIES

114.  Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

115.  Defendants' acts towards implementing the Illegal Forfeiture constituted a breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. § 1104.

116.  Defendants' acts towards deriving a benefit from the Illegal Forfeiture constituted a breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. § 1104.

117.  Defendants' acts towards waiting over 6 years following an actual forfeiture event to implement the Illegal Forfeiture constituted a breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. § 1104.

118.  Defendants' others acts in violation of ERISA as described herein (including placing the Plan at risk of disqualification) constituted a breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. § 1104.

119.  Plaintiff has been harmed as a result of the aforesaid.

### FOURTH COUNT
### VIOLATION OF ERISA
### ILLEGAL ALIENATION OF PLAN ACCOUNT

120.  Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

121.  Defendants acts towards implementing the Illegal Forfeiture constituted a violation of the anti-alienation rules under § 206(d) of ERISA, 29 U.S.C. § 1056(d).

122.  Plaintiff has been harmed as a result of the aforesaid.

## FIFTH COUNT
## VIOLATION OF ERISA
## <u>FAILURE TO RETAIN PLAN RECORDS</u>

123.  Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

124.  Defendants lost the Plan records, including records of the Vesting Directive, in violation of § 209 of ERISA, 29 U.S.C. § 1059.

125.  Plaintiff has been harmed as a result of the aforesaid.

## SIXTH COUNT
## VIOLATION OF ERISA
## <u>CO-FIDUCIARY LIABILITY</u>

126.  Plaintiff repeats and reasserts the allegations set forth above as if fully set forth herein.

127.  Fidelity Defendants' knowing and intentional acts towards assisting Company Defendants in implementing the Illegal Forfeiture, and further by losing the Plan's records, subjects such Fidelity Defendants' to co-fiduciary liability under § 405 of ERISA, 29 U.S.C. § 1105.

128.  Fidelity Defendants' others acts in violation of ERISA as described herein constituted a breach of fiduciary duty under § 404 of ERISA, 29 U.S.C. § 1104.

129.  Plaintiff has been harmed as a result of the aforesaid.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff demands that the Court enter judgment against Defendants as follows:

(1)   As appropriate equitable relief, Order that Defendant Company is equitably estopped from implementing the Illegal Forfeiture.

(2)     As appropriate equitable relief, Order that Defendant Company rescind the Illegal Forfeiture and restore Sushil Jain's Plan accounts back to 100% vesting.

(3)     As appropriate equitable relief, Order that the Illegal Forfeiture is void ab initio.

(4)     As appropriate equitable relief, Declare that the Defendants breached their respective fiduciary duties under ERISA to Sushil Jain and Plaintiff.

(5)     As appropriate equitable relief, Declare that the Plan be placed into constructive trust, and appoint Plaintiff as of the trustee of such constructive trust, and appoint Plaintiff as the Trustee of the Plan (as defined in the Plan) for the purpose of assuring that Defendant Company (i) ceases violating its fiduciary duty under ERISA with respect to the Plan and its participants, (ii) ceases causing the Plan to enter into prohibited transactions, (iii) ceases further acts in violation of the anti-alienation rules under ERISA, (iv) ceases losing Plan records in violation of ERISA, (v) ceases placing the Plan and its participants at risk of Disqualification and (vi) promptly terminates the Fidelity Defendants as service providers to the Plan and obtains the recoupment of all fees ever paid to them by the Plan.

(6)     Order that Defendants pay Plaintiff's reasonable attorney's fees and costs of this action pursuant to the provisions of § 502(g) of ERISA, 29 U.S.C. § 1132(g).

(7)     Order that Fidelity must immediately cease providing any services to any plan subject to ERISA that resides in the State of New Jersey.

(8)     Such other and further equitable relief as the Court deems just and proper.

Respectfully submitted,

**BERMAN, SAUTER, RECORD & JARDIM, PC**
Attorneys for Plaintiff

By: _____

Richard S. Meisner

Dated: February 6, 2012